**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Rupert Earl McCLENDON,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Bernest COLLINS, Defendant-Appellant.**

**Nos. 84–1278, 84–1304.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 11, 1985.

Decided Feb. 10, 1986.

noted, the parent holds a much narrower privilege to interfere with a subsidiary's *existing* contract. *Id.* at 750.

Sanford Svetcov, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Barbara A. Brenner, Remcho, Johansen & Purcell, Joyce B. Ladar, Jerrold M. Ladar, San Francisco, Cal., for defendant-appellant.

Before DUNIWAY, TANG, and PREGERSON, Circuit Judges.

DUNIWAY, Circuit Judge:

McClendon and Collins appeal from their convictions of conspiracy and multiple acts of armed bank robbery. We affirm.

## FACTS

On March 2, 1984, appellants were indicted on multiple counts of armed bank robbery and one count of conspiracy to commit bank robbery. Eleven of the thirteen counts concerned a string of bank robberies committed in the fall of 1983. One of the remaining counts, Count Two, charged McClendon and a third defendant, Higgins, with assisting in an unrelated bank robbery in July of that same year. Higgins was not indicted on any other charge.

On the first day of trial, appointed counsel for McClendon told the court that his client wanted him to withdraw and had retained a lawyer to replace him. Counsel, who had been working on the case for more than two months, said that there were "irreconcilable" differences between him and his client. After some discussion, McClendon volunteered that counsel stuttered and "wasn't that thorough" in his investigation of the case. The judge responded that he had known counsel for nine years and that he did not stutter. He then refused to allow the substitution unless McClendon produced his new attorney for the scheduled start of trial that afternoon and agreed to waive any future claim of ineffective assistance of counsel. When McClendon's new attorney did not appear that afternoon, the court denied the motion. McClendon did not renew his motion to substitute and his retained counsel did not appear at any point during the trial.

On the same day, the court granted each side the minimum number of peremptory challenges required by the Federal Rules of Criminal Procedure plus a proportionate number of additional challenges. After the first jury panel was discharged because of problems not relevant here, the court *sua sponte* reversed its decision to award additional challenges and limited the parties to the minimum of 10 to the defense and six to the government, provided for in Fed.R. Crim.P. 24(b). The court reasoned that it was an unnecessary exercise of judicial discretion to extend the number and that adherence to the standard would favor the "expeditious and efficient prosecution" of the case. Defendants unsuccessfully objected, claiming that significant differences in the codefendant's cases required the grant of additional challenges. Defendants later renewed their argument when they could not agree on how to exercise their last two peremptory challenges. Again, their motion for additional challenges was denied.

Through out voir dire, many jurors were examined individually in chambers concerning their claims of hardship. Counsel and the court reporter were present, but defendants were not. Defendants did not object to their exclusion.

Near the end of voir dire, the government concluded examination of juror Kemp by passing its sixth and final peremptory challenge. Under both the local rules and the court's statement at the time, the pass was the equivalent of exercising the challenge. The government thus exhausted its allotment of peremptory challenges.

The defense then asked to reopen voir dire of juror Kemp. The government and court agreed, after defendants stipulated that the government could reconsider its waiver of challenge against Kemp. The court concluded the agreement by stating that the proceedings were back where they had been before the government passed its last peremptory.

Before juror Kemp could be reexamined, the court received a note stating that a previously selected juror had been over-

heard making biased statements to some of the other jurors. After questioning, that juror was excused by stipulation. Juror Brown took the discharged juror's place in the box and both she and juror Kemp were examined. At the close of the examination, the government sought to exercise its peremptory challenge against juror Brown. The defense objected, arguing that the stipulation to restore the government's final challenge only applied to its use against juror Kemp. The court allowed the government to excuse Brown.

After a six-week trial, appellants were convicted of conspiracy and multiple instances of armed bank robbery. McClendon was found guilty on Count Two while his alleged accomplice, codefendant Higgins, was acquitted.

## I. REFUSAL TO GRANT ADDITIONAL PEREMPTORY CHALLENGES.

Both appellants claim that the court abused its discretion in (1) reversing its initial decision to grant defendants additional peremptory challenges, and (2) refusing to grant defendants additional challenges when defense counsel could not agree on the joint exercise of their final two challenges. Citing the rule that any impairment of the right to peremptory challenges mandates reversal without a showing of prejudice, *Swain v. Alabama,* 1965, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759; *United States v. Brooklier,* 9 Cir., 1982, 685 F.2d 1208, 1223, appellants conclude that reversal is automatically required.

■ However, there is no "right" to additional peremptory challenges in multiple defendant cases. The award of additional challenges is permissive, not mandatory, Fed.R.Crim.P. 24(b), and rests in the trial court's sound discretion. *United States v. Hueftle,* 10 Cir., 1982, 687 F.2d 1305, 1309; *United States v. Haldeman,* D.C.Cir., 1976, 559 F.2d 31, 79; *see United States v. Turner,* 9 Cir., 1977, 558 F.2d 535, 538. *Cf. United States v. Hooper,* 5 Cir., 1978, 575 F.2d 496, 498.

■ At oral argument appellants agreed that the district court could properly have denied their initial motion for additional challenges. Absent a showing of prejudice to defendants, it follows that it was also within the court's discretion to review and reverse its decision. *See United States v. Tucker*, 5 Cir., 1976, 526 F.2d 279, 283. It was proper for the court·to consider the need for expeditious proceedings in so doing. *United States v. Johnson*, 6 Cir., 1978, 584 F.2d 148, 155. The district court did not abuse its discretion in denying appellants additional peremptory challenges.

■ Appellants also err in their claim that the deadlock over the use of their final challenges required the grant of additional challenges. Disagreement between codefendants on the exercise of joint peremptory challenges does not mandate a grant of additional challenges unless defendants demonstrate that the jury ultimately selected is not impartial or representative of the community. *Hueftle*, 687 F.2d at 1309; *see Stilson v. United States*, 1919, 250 U.S. 583, 586, 40 S.Ct. 28, 29, 63 L.Ed. 1154. *Cf. Hooper*, 575 F.2d at 498. Appellants have not made the necessary showing.

## II. RESTORATION OF GOVERNMENT'S PASSED PEREMPTORY CHALLENGE.

McClendon and Collins also claim that the district court abused its discretion when it allowed the government to exercise its restored peremptory challenge against juror Brown. They correctly note that Local Rule 326–1 requires that a passed challenge be treated as waived and argue that their stipulation to the contrary was limited to the challenge's use against juror Kemp. Because the passed challenge represented the government's last peremptory, appellants contend that the court's action effectively granted the government an additional peremptory challenge without defendant's consent, and thus violated Federal Rule of Criminal Procedure 24(b).

■ It is true that the district court may not grant the government more than the minimum number of peremptory challenges without the consent of the defendants. Fed.R.Crim.P. 24(b); *see, e.g., United States v. Tucker*, 526 F.2d at 283. In this case, however, the court did not grant the government an extra challenge. Instead, it restored a passed challenge, and did so with appellants' consent. Although discussion of the stipulation to restore the passed challenge centered on juror Kemp's reexamination, the stipulation was not limited to that reexamination. In fact, in summing up the discussion, the trial judge stated that the proceedings had returned to the point just before the government was asked to exercise its last peremptory challenge. If a new juror had unexpectedly been brought into the box at this point originally, the government could certainly have used its last challenge against the new juror instead of juror Kemp. The fact that the unanticipated discharge of a previously examined juror occurred just before the government's restored opportunity to exercise the same challenge does not require a different result.

## III. EXCLUSION FROM IN–CHAMBERS VOIR DIRE.

■ McClendon and Collins argue that their exclusion from in-chambers voir dire of prospective jurors violated Rule 43(a) of the Federal Rules of Criminal Procedure. The Rule provides:

> The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

Appellants did not object to their exclusion from in-chambers conferences at any time in the proceeding.

In *United States v. Gagnon*, 1985, ── U.S. ──, 105 S.Ct. 1482, 84 L.Ed.2d 486, the Supreme Court considered just this situation. Assuming for the purposes of the case that an in camera conference with a juror was a "stage of the trial," the Court held that

failure by a criminal defendant to invoke his right to be present under Federal Rule of Criminal Procedure 43 at a conference which he knows is taking place between the judge and a juror in chambers constitutes a valid waiver of that right.

*Id.*, 105 S.Ct. at 1486. Under *Gagnon,* therefore, both McClendon and Collins waived their right to be present at the in-chambers voir dire.

## IV. SUBSTITUTION OF COUNSEL.

█ In *Brown v. Craven,* 9 Cir., 1970, 424 F.2d 1166, we held that refusal to allow substitution of attorneys may result in denial of the constitutional right to effective assistance of counsel if the defendant and his attorney are embroiled in an "irreconcilable conflict." *Id.* at 1170. In applying the *Craven* rule, three factors are considered: (1) the timeliness of the motion to dismiss counsel; (2) the adequacy of the court's inquiry into defendant's complaint; and (3) whether the conflict between defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense. *United States v. Mills,* 9 Cir., 1979, 597 F.2d 693, 700. McClendon argues that the district court failed to conduct the necessary inquiry and that reversal is therefore required. Analysis of the district court's ruling under the full *Mills* test demonstrates that his claim lacks merit.

█ The first factor in the *Mills* test is the timing of the motion to substitute. In this case, the motion was made on the first day of trial. It is within the trial judge's discretion to deny a motion to substitute made during or on the eve of trial if the substitution would require a continuance. *United States v. Williams,* 9 Cir., 1979, 594 F.2d 1258, 1260–61; *United States v. Michelson,* 9 Cir., 1977, 559 F.2d 567, 572. The trial judge in this case denied McClendon's motion after refusing to grant a continuance to allow the substitution. This decision was not an abuse of discretion.

While the trial judge might have made a more thorough inquiry into the substance of McClendon's alleged conflict with counsel, McClendon's description of the problem and the judge's own observations provided a sufficient basis for reaching an informed decision. Thus, the district court's failure to conduct a formal inquiry was not fatal error. Moreover, there was no showing that the alleged conflict was so great that it prevented McClendon from presenting an adequate defense. The record reveals no lack of communication between McClendon and counsel and shows that counsel was vigorous and well prepared in his argument. Under these circumstances and considering the untimeliness of the motion, the trial judge did not abuse his discretion in denying McClendon's motion to substitute counsel.

## V. SUFFICIENCY OF THE EVIDENCE ON COUNT TWO.

McClendon's final claim on appeal is that there was insufficient evidence to support his conviction on Count Two of the indictment. Count Two charged McClendon and codefendant Higgins with aiding an unidentified man in a bank robbery on July 18, 1983. The robbery preceded and was independent of the Collins/McClendon conspiracy and robberies that were the subject of other counts in the indictment.

█ The evidence on Count Two is not in dispute. It showed that an armed man robbed the United Bank on Polk Street of $700 on July 18, 1983. The robber fled on foot to a waiting car occupied by two black males. One of the occupants, later identified as Higgins, left the car just before his companion and the robber drove away. A few minutes later the same car, now occupied by three black men, was seen speeding on Polk Street and chased by police, who lost it. Less than fifteen minutes later, other police stopped the car. At that time there were only two occupants, defendants McClendon and Higgins, who were arrested. The third man, the alleged bank robber, had disappeared.

Two eyewitnesses who saw the getaway near the bank confirmed that McClendon

and Higgins were the same two men they had seen in the waiting getaway car. They also confirmed that the car stopped was the same car. One of the eyewitnesses, who had gotten a particularly good look at McClendon, made an in-court identification of both men as the ones she had seen in the getaway car. The second eyewitness was not able to make an in-court identification.

On the basis of this evidence, McClendon was convicted and Higgins was acquitted. The essence of McClendon's claim is that the jury could not reach opposite conclusions on virtually the same evidence. The fact that they did, McClendon argues, demonstrates that the evidence on Count Two was not sufficient for conviction and that in order to convict McClendon, the jury must have improperly considered evidence introduced on the other robbery counts.

In reviewing a sufficiency of the evidence claim, this court must affirm the verdict if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 1979, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (emphasis in original); *see United States v. Cusino,* 9 Cir., 1982, 694 F.2d 185, 187.

The evidence against McClendon was sufficient to support a conviction under this standard. From the eyewitness testimony alone, a jury could rationally conclude that McClendon had waited for the robber outside the bank and helped him to escape. *See United States v. Larios,* 9 Cir., 1981, 640 F.2d 938, 940 (testimony of one eyewitness sufficient to uphold conviction). Moreover, the jury could have properly considered evidence of McClendon's involvement in subsequent robberies on the issues of his modus operandi, knowledge, and intent in the robbery charged in Count Two. *See, e.g., United States v. McKoy,* 9 Cir., 1985, 771 F.2d 1207, 1213–14 (evidence of other crimes relevant to any issue at trial is

admissible except where the evidence proves only the defendant's criminal disposition); *United States v. Casanova,* 9 Cir., 1981, 642 F.2d 300, 301 (evidence of two similar robberies admissible on issue of knowledge and intent). While the fact that the jury was less convinced of Higgins' guilt may be curious, it does not undermine our finding that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" from the evidence presented against McClendon. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789.

In each appeal, the judgment is AFFIRMED.